United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER JEFFERSON, as guardian ad litem for VLADIMIR JEFFERSON,<br><br>        Plaintiff,<br><br>   v.<br><br>COUNTY OF NAPA, and COUNTY OF NAPA CHILD PROTECTIVE SERVICES,<br><br>        Defendants. | No. C 03-5031 SI<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR ISSUE PRECLUSION SANCTIONS; GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

On November 30, 2007, the Court heard argument on defendants' motion for summary judgment and defendants' motion for issue preclusion. For the reasons set forth below, the Court GRANTS defendants' motion for issue preclusion sanctions and GRANTS defendants' motion for summary judgment.

## BACKGROUND

**I.    Factual background**

On September 16, 2002, at about 11:30 a.m., an unnamed woman called the Napa Emergency Women's Services ("NEWS") domestic violence hotline to report the suspected domestic abuse of her neighbor, Goldie Jefferson. Faruqui Decl., Ex. A at 1. The caller said that she had become close with Mrs. Jefferson because their children played together, and that Mrs. Jefferson had told her about abuse by her husband, Peter. *Id.* at 2. The caller also reported that she felt the domestic violence was severe and believed that the couple's then eight-year-old son, Vladimir, had witnessed it. *Id.* She had heard Vladimir whisper to his mother, "Please smile, I don't want them to know you were kicked." *Id.*

The hotline worker made a written "Suspected Child Abuse Report" to Napa County Child Protective Services ("CPS") that day. *Id.* A CPS intake worker completed an Intake Screening Form, noting on the "Screener Alerts" line: "Domestic Violence/Bulgarian family, limited English." Seely Decl., Ex. D at 1. CPS caseworker Denise Seely ("Seely") reviewed the Intake Screening Form. Seely Decl. ¶ 2. Seely's supervisor also reviewed the form, classified the abuse as "potentially substantial," and directed Seely to conduct an in-person investigation. *Id.* Seely prepared an "Emergency Response Referral Information" form, and classified the "abuse category" as "substantial risk," and checked the "10-day" referral box. *Id.* ¶ 3, Ex. E.

On September 24, 2002, at 2:30 p.m., Seely went to St. John's Lutheran School to talk to Vladimir. Seely Decl. ¶ 4. Seely spoke with St. John's Office Manager, Cynthia Zeller, and asked for permission to speak to Vladimir. Zeller Decl. ¶ 5. Zeller has submitted a declaration which states,

> As office manager, I am familiar with the school's practice concerning requests for interview by representatives of the Napa County Child Protective Services Department ("CPS"); I was so familiar on September 24, 2002.
>
> The practice was that CPS was regarded as a quasi-law enforcement agency with which the school would cooperate. Specifically, if a CPS representative were to ask to speak with a student, then permission would be granted unless some peculiar difficulty or impediment existed. Thereafter, if a student were to ask for me to be present during the interview, I would attend. Once I was satisfied that the child was comfortable enough for the interview to proceed, then a private room would be located so that the conversation could be confidential.
>
> In the approximate half-dozen instances of CPS representatives' requests for student interviews during the 18 months prior to September of 2002, no student declined to be interviewed or requested the presence of an adult in addition to the CPS representative.
>
> On September 24, 2002, CPS representative Denise Seely came to the school and asked for permission to speak with Vladimir Jefferson. She told me that she needed to speak with Vladimir but did not tell me why.
>
> I called by intercom to the third grade classroom and asked for Vladimir to come to the office. St. John's Lutheran School (preschool-8) is small and students regularly come to the office, without adult accompaniment, for diverse reasons.
>
> I was acquainted with Vladimir and he with me. When he arrived, he did not seem upset or uncomfortable.
>
> I recall introducing Ms. Seely and telling Vladimir that she would like to speak with him. I asked if he was willing to speak with her and, if so, whether he wanted me to be present. Vladimir was very relaxed – generally, he is a very self-confident boy – and said that he did not.
>
> I was satisfied that Vladimir was neither intimidated nor nervous. If he had seemed so,

2

1  I would have asked again if he wanted me to be with him.

2  I led Ms. Seely and Vladimir to a private office, where they spoke for a short time.

3  When the interview was over, Vladimir returned to the school office. In my opinion, he
4  was unchanged (i.e. he was not upset, agitated or the like) and seemed very blasé about the experience.

5  I told Vladimir to return to his third grade classroom. Ms. Seely then left.

Zeller Decl. ¶¶ 2-12.

The parties agree that Seely's interview of Vladimir lasted approximately one half-hour. Seely Decl. ¶ 6; Jefferson Decl. ¶ 5.[1] During the interview, Vladimir stated: that he lives with his mother, father, and two chickens; that he is in the third grade; that he is good at math and social studies; that he has friends at school; and that after school he does homework, watches TV or plays in the park. Seely Decl., Ex. F at 1 (9/24/02 entry). He stated that "he hardly ever gets caught doing something wrong," so he rarely gets in trouble. *Id.* When he does get in trouble he gets a time out, is not allowed to watch TV, or has his toys taken away. *Id.* He said that he is not hit by his parents, and that there is no hitting in his family. *Id.*

Vladimir asked Seely why she had chosen to question him. *Id.* She replied that the purpose of CPS is to make sure kids are safe. *Id.* She told him that CPS "had received information that someone heard hitting going on in his home, so she wanted to check with him to find out what was happening and if he was safe." *Id.* Vladimir said again that there is no hitting in his family, and stated: "My home is the safest place for me." *Id.* Seely asked if he had numbers he could call if something happened that scared him, and he said that he could go to a neighbor, but he did not need to because he is safe at home. *Id.* He did not ask any other questions. *Id.* Seely gave him her business card and thanked him. *Id.* He went back to class. *Id.*

According to Seely's Investigation Narrative, Seely called the Jefferson home on September 25, 2002 and left a message on the answering machine. *Id.* Ex. F at 1 (9/25/02 entry). On September 30, 2002, Seely again called the Jefferson home and spoke to Peter Jefferson. *Id.* at ¶ 7. Seely reported that Mr. Jefferson "was extremely agitated and upset that Vladimir had been interviewed without his

---

[1] As discussed *infra*, plaintiff resubmitted the July 21, 2004 declaration of Peter Jefferson in opposition to the current motion for summary judgment.

3

permission. I explained the purpose of my visit, that direct conversation was necessary and that CPS was obliged to investigate such reports." *Id.* On October 1 and 9, 2002, Seely left messages on the Jefferson's machine asking to meet with Mr. and Mrs. Jefferson. *Id.* ¶ 8. She never met with the Jeffersons. *Id.* ¶ 9. Seely closed the file on October 14, 2002, concluding that the allegation of abuse was "inconclusive" and "that no further CPS intervention was practical." *Id.*, Ex. F at 3 (10/14/02 entry).

According to Mr. Jefferson's July 2004 declaration, Vladimir's academic performance dropped after the CPS interview, and he appeared unusually nervous and secretive. Jefferson Decl. ¶ 4, 6. Mr. Jefferson states that Vladimir was "unusually reluctant" to discuss the CPS interview with him. *Id.* ¶ 5. According to Mr. Jefferson,

> Vladimir "told me that a woman took him out of class and asked him 'Are you punished sometimes when you misbehave?' Vladimir indicated that the meeting had been very brief. I later learned that he had been out of the classroom and in this meeting for approximately one half-hour. He has not told me what else was said during this meeting.

*Id.* As discussed in greater detail below, Vladimir has never been deposed in this case and has never submitted a declaration. Accordingly, the record does not contain Vladimir's account of the CPS interview.

## II.  Procedural background

On November 12, 2003, Peter Jefferson filed this action on behalf of his son, Vladimir, alleging claims for violation of Vladimir's civil rights, false imprisonment and negligence. By order filed August 13, 2004, the Court granted summary judgment in favor of defendants. The Court held, *inter alia*, that assuming Seely's interview of Vladimir was a seizure under the Fourth Amendment, that the seizure was reasonable based upon the evidence presented.[2] The Court also granted summary judgment in favor of defendants on Vladimir's claims for false imprisonment and negligence. Plaintiff appealed

---

[2] In connection with the first motion for summary judgment, defendants filed a declaration from Ms. Seely, as well as the Suspected Child Abuse Report, Emergency Response Referral Information form, Intake Screening Form, and Seely's Investigation Narrative. *See* Docket No. 10. Plaintiff filed a declaration from Peter Jefferson. In support of the instant motion for summary judgment, defendants filed a new declaration from Ms. Seely, all of the same forms and reports mentioned above, a declaration from St. John's Office Manager Cynthia Zeller, and a declaration from Alvina Tipton, who was the interim principal at St. John's at the time of the CPS interview.

4

this Court's decision, and by memorandum decision filed March 13, 2007, a divided Ninth Circuit panel reversed.

The majority held,

> The evidence shows that Vladimir was removed for questioning from his classroom in a private school without a warrant. The removal was at the behest of and pursuant to an assertion of authority by a Napa County Child Protective Services worker. The evidence leaves no doubt that Vladimir was detained for questioning, at least temporarily, and the County has not come forward with any evidence that the questioning was pursuant to a valid consent by Vladimir, or to any consent by his parents or the school authorities. The County had the burden of coming forward with evidence of that. Moreover, absent consent, the County had the burden of coming forward with evidence to show the reasonableness of its actions under the circumstances. It did not do so.
>
> We hasten to add that we are not deciding that the detention of Vladimir was without consent; nor are we deciding that it was not reasonable. Our determinations are based on the undeveloped record at summary judgment, and are not meant to establish any facts as the law of the case.

Memorandum Decision at 2-3 (internal citations and footnotes omitted). The dissent disagreed and found that the County had produced sufficient evidence of reasonableness.

On remand, defendants sought to take Vladimir's deposition in order to develop a fuller record. Plaintiff objected to the deposition, asserting that Vladimir's testimony was irrelevant for a number of reasons. By order filed June 22, 2007, the Court granted defendants' request to take Vladimir's deposition. The Court found that defendants were entitled to take Vladimir's deposition in light of the "Ninth Circuit's explicit direction that the factual record be developed on remand as to the issues of consent and the reasonableness of defendants' actions under the circumstances." June 22, 2007 Order at 1-2.[3]

The County noticed Vladimir's deposition for July 19, 2007.[4] Two days prior to the deposition, plaintiff's attorney cancelled the deposition due to a "prior commitment." The County attempted to contact plaintiff's counsel regarding rescheduling the deposition; after plaintiff's counsel failed to respond either to telephone messages or a letter, defendants re-noticed the deposition for August 15,

---

[3] There is no dispute that the only witnesses to the events surrounding the CPS interview of Vladimir are Vladimir, the CPS social worker, Denise Seely, and St. John's Lutheran School Office Manager Cynthia Zeller.

[4] The facts surrounding Vladimir's deposition are contained in the parties' letter briefs. *See* Docket Nos. 47, 48, 50-55, and 57.

5

2007. On August 3, 2007, the Court held a case management conference and ordered that Vladimir's deposition take place by August 15, 2007. *See* August 3, 2007 Minute Order. The County re-noticed Vladimir's deposition for August 15, 2007. On August 14, plaintiff's counsel cancelled the deposition, informing defense counsel by email that "Mr. Jefferson informed me that neither he nor his son will be able to make the deposition tomorrow. I will call you to discuss when I am by phone. The deposition cannot proceed tomorrow as scheduled." The next day, plaintiff's attorney called defense counsel and stated that he would ask his client for alternate dates. Plaintiff's counsel then failed to communicate with defendants for two weeks, prompting defendants to seek relief from the Court.

By order filed September 4, 2007, the Court issued a further order regarding Vladimir's deposition. The Court found that plaintiff had provided no explanation for the last minute cancellations, or for counsel's failure to communicate with defendants regarding rescheduling the deposition. Instead, plaintiff had simply repeated many of the arguments that the Court previously rejected regarding why Vladimir should not be deposed. The Court also noted that plaintiff stated that Peter Jefferson was "receiving treatment for cancer," and thus unable to attend a deposition of his son. In the September 4, 2007 order, the Court directed plaintiff to file a declaration from Mr. Jefferson's treating physician regarding the nature of Mr. Jefferson's treatment, including the type of treatment, its duration, and when Mr. Jefferson could be expected to attend a deposition. The Court also directed plaintiff to file a supplemental letter brief regarding whether there were any individuals (such as other relatives) who could attend Vladimir's deposition in lieu of Mr. Jefferson. Finally, the Court cautioned plaintiff that the failure to comply with the September 4, 2007 order, or any further orders of the Court, would result in sanctions which could include issue preclusion.

After receipt of plaintiff's filings in response to the September 4, 2007 order, the Court issued a further order regarding Vladimir's deposition on September 25, 2007. The Court found plaintiff's response deficient because none of the information provided established that Mr. Jefferson was unable to attend a deposition of his son. The Court also noted that plaintiff's counsel had asserted, without any explanation, that there were no other adults who could attend Vladimir's deposition in Mr. Jefferson's stead. The Court ordered that Vladimir's deposition take place no later than October 12, 2007, with or

without the presence of Mr. Jefferson.[5] The order also stated that the Court would not countenance any further delays of Vladimir's deposition, and the Court informed plaintiff that "the failure to comply with this order will result in issue preclusion sanctions." September 25, 2007 Order at 2. The Court modified the pretrial schedule in order to accommodate the delay in taking Vladimir's deposition. *Id*.

Immediately after the issuance of the September 25, 2007 order, defendants contacted plaintiff's counsel by telephone and email to schedule Vladimir's deposition. Defendants' Motion for Issue Preclusion, Ex. A. After receipt of plaintiff's counsel's schedule, defendants noticed the deposition for October 11, 2007, the only date on which plaintiff's counsel was available prior to the October 12, 2007 deadline. *Id*. Ex. B, C. On October 8, 2007, plaintiff's counsel informed defendants that Mr. Jefferson "will not be able to produce his son" for deposition. *Id*. Ex. D. Plaintiff's counsel did not provide any explanation for the cancellation.

On October 12, 2007, defendants filed a motion for summary judgment, and a motion for issue preclusion based on plaintiff's failure to appear for his deposition. Both motions were scheduled for a hearing on November 30, 2007. Plaintiff did not file oppositions to the motions, which were due no later than November 9, 2007. At 11:44 p.m. on November 29, 2007, plaintiff filed a "Declaration in Opposition to Motion for Issue Preclusion and Summary Judgment," signed by plaintiff's counsel. Plaintiff's counsel attached to his declaration a declaration from Peter Jefferson dated July 21, 2004, which was filed in opposition to defendants' first motion for summary judgment. At the November 30, 2007 hearing, plaintiff's counsel provided no explanation for his failure to timely file opposition papers, instead asserting – without any authority – that he was not required to file an opposition because plaintiff's position was clear based upon all previous filings in this case.[6]

---

[5] In its June 22, 2007 order, the Court rejected plaintiff's assertion that the deposition should not proceed because it would traumatize Vladimir because he is a minor. The Court noted that Vladimir is now 13 years old, represented by counsel, and that while a deposition is stressful, it is not an inherently traumatic experience. The Court also informed plaintiff that he could contact the Court during the deposition if any issues arose.

[6] Plaintiff's counsel also asserted that he was not required to follow Civil Local Rule 7-3, which requires that oppositions be filed no less than 21 days before the hearing date, because Federal Rule of Civil Procedure 56 permits oppositions to be filed at any time. This assertion lacks merit. Rule 56 states that a party opposing summary judgment "may serve opposing affidavits before the hearing." Federal Rule of Civil Procedure 83 authorizes district courts to adopt local rules governing practice so

7

**LEGAL STANDARD**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

In a motion for summary judgment, "[if] the moving party for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact, the burden of production then shifts so that the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial." *See T.W. Elec. Service, Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the non-moving party. *See T.W. Electric*, 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S. Ct. 1348 (1986)); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991). The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Hearsay statements found in affidavits are inadmissible. *See, e.g., Fong v. American Airlines, Inc.*, 626 F.2d 759, 762-63 (9th Cir. 1980).

**DISCUSSION**

**I.     Defendants' motion for issue preclusion**

As a result of plaintiff's repeated failure to appear for his deposition in violation of numerous court orders, defendants seek issue preclusion on the following: (1) any contention that either Ms. Zeller or Vladimir did not consent to the interview, (2) any contention that Vladimir's participation in the

---

long as those rules are consistent with federal statutes and rules. Civil Local Rule 7-3 is consistent with Rule 56, and accordingly all parties and counsel are required to comply with the briefing schedule set forth in the local rules.

interview was a result of fraud, deceit or duress, (3) any contention concerning Vladimir's physical or emotional condition during or after the interview, and (4) plaintiff's claim for negligent infliction of emotional distress since the lack of Vladimir's deposition precludes any exploration of Vladimir's subjective reaction to the interview or his emotional distress as a result.  As noted above, plaintiff did not timely file an opposition to defendants' motion.  Instead, plaintiff's counsel filed a declaration approximately 9 hours before the hearing, without seeking leave of Court to do so.  Counsel did not provide any explanation regarding why he did not file the declaration by the deadline, and accordingly the Court STRIKES the untimely filing.  (Docket No. 75).[7]

Federal Rule of Civil Procedure 37 authorizes the Court to impose issue preclusion sanctions for a party's failure to comply with discovery orders and failure to appear for a noticed deposition.  *See* Fed. R. Civ. Proc. 37(b)(2)(A)-(B), (d).  As discussed in detail above and in the Court's several orders regarding Vladimir's deposition, plaintiff[8] has repeatedly cancelled his deposition at the last minute, without providing reasons for doing so.  The Court has warned plaintiff several times that the failure to appear for his deposition would result in issue preclusion sanctions.  Plaintiff has not provided any explanation for the most recent cancellation; the Court ordered Vladimir to appear for his deposition with or without his father, and thus Mr. Jefferson's health cannot provide a justification.  Accordingly, the Court GRANTS defendants' motion for issue preclusion, which is fatal to plaintiffs' claims.  As discussed below, however, even if the Court did not impose issue preclusion sanctions and evaluated the record as a whole, the Court finds that plaintiff's claims fail and defendants are entitled to summary judgment.

---

[7] The Court notes, however, that even if the Court considered Mr. Robinson's declaration, plaintiff's counsel does not provide any explanation for the failure to produce Vladimir for deposition on October 11, 2007.  Mr. Robinson also asserts that defendants unilaterally cancelled depositions of defense witnesses.  The Court notes that plaintiff never sought relief from this Court regarding any alleged discovery misconduct by defendants.

The Court will consider the July 21, 2004 declaration of Peter Jefferson, which was attached to the November 29, 2007 Robinson Declaration, because that declaration was originally filed in 2004 and is already part of the record.

[8] The Court recognizes that the cancellations appear to have been requested by plaintiff's father, Mr. Jefferson.

9

**II.     Defendants' motion for summary judgment**

    **A.     § 1983 claim**

The Ninth Circuit reversed and remanded for an assessment, on a fuller evidentiary record, of whether the "questioning was pursuant to a valid consent by Vladimir, or to any consent by his parents or the school authorities" or, absent consent, whether the County's actions were reasonable under the circumstances. Defendants contend that the record, now supplemented by declarations from Ms. Zeller and Ms. Tipton, establishes that the interview of Vladimir was pursuant to consent, and also that the County's actions were reasonable.

The Court finds that the evidence shows that school authorities consented to the interview of Vladimir. The Zeller and Tipton declarations state that it was St. John's practice to cooperate with CPS, and that if a CPS representative were to ask to speak with a student, "permission would be granted unless some peculiar difficulty or impediment existed." Zeller Decl. ¶ 3; Tipton Decl. ¶ 4. Ms. Zeller states that she asked Vladimir if he was willing to speak to Ms. Seely, and, if so, whether he wanted Ms. Zeller to be present. Zeller Decl. ¶ 8. Zeller states, "Vladimir was very relaxed – generally, he is a very self-confident boy – and said that he did not." *Id*. Ms. Zeller states that she "was satisfied that Vladimir was neither intimidated nor nervous," and that "[i]f he had seemed so, I would have asked again if he wanted me to be with him." *Id*. ¶ 9. Similarly, Ms. Seely states, "[g]iven the choice of being interviewed in private or in the company of school employee Cynthia Zeller, Vladimir said that he was comfortable talking alone with me." Seely Decl. ¶ 5. The only evidence submitted by plaintiff – Peter Jefferson's July 21, 2004 declaration – does not contradict defendants' evidence regarding consent.

The Court further finds that the County's actions were reasonable. The CPS interview was in response to information about potentially severe domestic violence in the Jefferson home. The decision to interview was made by a CPS representative statutorily vested with the discretion to make such a determination, and the interview itself was authorized by statute. The interview was conducted by a CPS worker, and took place at Vladimir's school during school hours. The CPS worker gave Vladimir the choice of being interviewed in private or with another adult present, and he said that he was comfortable talking to her alone. The interview lasted one half-hour, addressed typical topics for a third-grader, like his favorite subjects and after-school activities, and broached the issue of violence at

1 home in terms of "hitting." The Court finds nothing in the record to suggest that CPS worker Seely
2 conducted the interview in an aggressive or invasive manner. Summary judgment is proper if "it is clear
3 that no reasonable jury could conclude that the plaintiff's constitutional rights were violated." *Wallis*
4 *v. Spencer*, 202 F.3d 1126, 1138 (9th Cir. 200). Based on all these circumstances, the Court finds that
5 no reasonable jury could conclude that plaintiff's constitutional rights were violated and GRANTS
6 summary judgment in favor of defendants.

### B. State claims

Plaintiff also alleges that defendants committed the torts of false imprisonment and negligent infliction of emotional distress during the CPS interview of Vladimir. State law immunities may shield defendants from liability for state tort claims. Defendants assert that Cal. Govt. Code § 815 shields them from claims of negligence. However, defendants are not entitled to immunity for "non-discretionary actions or [] at least some intentional torts committed in the course of making the investigation, such as battery and false imprisonment." *Wallis*, 202 F.3d at 1145, *citing Newton v. County of Napa*, 217 Cal.App.3d. 1551, 1561 (1990) ("[T]he immunity surrounding the decision to make an in-person response . . . does not exclude the possibility of tortious conduct in making the investigation."). Thus, defendants are protected from state tort liability for their decision to undertake an in-person response to the allegation, but they are not statutorily immune for the alleged torts of false imprisonment or negligent infliction of emotional distress.

Defendants contend that they are entitled to summary judgment on plaintiff's false imprisonment claim because Vladimir's interview was specifically authorized by California Penal Code § 11174.3, and thus any restraint on his liberty was lawful. The Court agrees. False imprisonment is "the unlawful violation of the personal liberty of another." Cal. Penal Code § 236. "Unlawful" means "without authority." *Barrier v. Alexander*, 100 Cal.App.2d 497 (1950). Here, defendants had statutory authority to conduct the interview.[9] Further, the record shows that Vladimir agreed to speak with CPS worker Seely. The interview lasted half an hour, and at no time was Vladimir's personal liberty

---

[9] The Court defers to CPS's assessment that the allegation of Vladimir's exposure to severe domestic violence constituted child abuse or neglect worthy of investigation.

11

constrained in any unlawful way.  Thus, this claim fails, and summary judgment is appropriate.

Defendants also argue that because CPS's conduct comported with the law, it cannot have been negligent.  The tort of negligent infliction of emotional distress is actually the tort of negligence; "the traditional elements of duty, breach, causation, and damages apply."  6 Witkin Summary of Cal. Law (9th ed. 1988) Torts § 838.  When Seely undertook the interview of Vladimir, she assumed a duty – to act with reasonable care.  The evidence shows that Seely never breached that duty.  There are simply no facts to support plaintiff's theory of negligence.  Accordingly, the Court also GRANTS defendants' motion as to this claim.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendants' motion for issue preclusion and GRANTS defendants' motion for summary judgment.  (Docket Nos. 63 and 64).

**IT IS SO ORDERED.**

Dated: December 14, 2007

SUSAN ILLSTON
United States District Judge